IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,      ) | |
| ) | |
| PLAINTIFF,      ) | |
| ) | |
| v.      ) | CASE No.  2:09-cv-887-MEF |
| ) | |
| SEVENTEEN THOUSAND FOUR      ) | |
| HUNDRED SIXTY-SIX ($17,466.00)      ) | (WO- DO NOT PUBLISH) |
| DOLLARS IN UNITED STATES      ) | |
| CURRENCY,      ) | |
| ) | |
| DEFENDANT.      ) | |

**MEMORANDUM OPINION AND ORDER**

In this action for Forfeiture *In Rem* pursuant to Title II of the Controlled Substances Act, 21 U.S.C. § 801 *et seq*., the United States seeks to forfeit and condemn seventeen thousand four hundred sixty-six dollars ($17,466.00) in United States currency seized during the arrest of Federico Vieyra-Garcia ("Garcia") for trafficking illegal drugs. The sole claimant before this Court is Shelia Delgado-Solis ("Solis"), Garcia's wife. This cause is before the Court on cross motions for summary judgment. *See* Doc. # 17 and Doc. # 21. The Court has carefully considered the submissions of the parties and the applicable law. For the reasons set forth below, the Court finds that Solis' motion is due to be DENIED and the United States of America's motion is due to be GRANTED.

## JURISDICTION AND VENUE

Jurisdiction is proper pursuant to 28 U.S.C. §§ 1345 and 1355.[1] Venue is proper in this district pursuant to 28 U.S.C. § 1395 and 21 U.S.C. § 881(j) because the act or omissions giving rise to the forfeiture occurred in this district and the property is located within this district.

## FACTS AND PROCEDURAL HISTORY

On February 19, 2009, agents from the Montgomery Resident Office, initiated a Title III investigation on a drug trafficking organization with activities in Alabama, Illinois, North Carolina, and elsewhere. During the investigation, agents identified Garcia as a distributor for the organization. The investigation identified Garcia's residence located at 3605 County Road 47, Lot 4, Verbena, Alabama, as a stash house for the organization. As a result of further investigation, a federal grand jury returned an indictment against Garcia and others on April 21, 2009.

On April 30, 2009, Commander Todd Mims, with the Central Alabama Drug Task Force, obtained a state search warrant for Garcia's residence in Verbena. Agents conducted surveillance of the Verbena address. They saw Garcia at the residence and observed vehicles

---

[1] Pursuant to 28 U.S.C. § 1345, "the [federal] district courts shall have original jurisdiction of all civil actions, suits or proceedings commenced by the United States . . ." In addition, 28 U.S.C. § 1355(a) provides that "the [federal] district courts shall have original jurisdiction, exclusive of the courts of the States, of any action or proceeding for the recovery or enforcement of any fine, penalty, or forfeiture, pecuniary or otherwise, incurred under any Act of Congress, except matters within the jurisdiction of the Court of International Trade under section 1582 of this title."

parked at the residence that were registered to Garcia. On May 1, 2009, agents from the Montgomery Resident Office, the Chilton County Sheriff's Office, and the Central Alabama Drug Task Force, executed the state search warrant at 3605 County Road 47, Lot 4, Verbena, Alabama. They intended to arrest Garcia if he was there, but he was not present. They did seize one and one half kilograms of cocaine HCL and three bricks of marijuana during this search. They also observed three vehicles parked at the residence; all three vehicles were registered to Garcia.

Prior to the search of 3605 County Road 47, Lot 4, Verbena, Alabama, agents had learned that Garcia sometimes lived at 115 Colonial Circle, Clanton, Alabama. They proceeded there hoping to locate him for arrest. Garcia was present at this address along with his common-law wife Solis. Agents took Garcia into custody as he was attempting to retrieve a 9mm hand gun from inside the master bedroom.

After Garcia was arrested and advised of his rights, he indicated that he wished to cooperate with agents. Agent Shaw asked Garcia if there were any drugs, currency, or other weapons in the house. Garcia indicated that there were and gave the agents consent to search the residence.

During the search, agents located a total of $17,466.00 in United States Currency from various places within 115 Colonial Circle. There were two vacuum sealed bags of currency, containing $5,000 and $6,000 respectively, located in the bathroom. There was $85.00 in U.S. currency located on the dresser in the master bedroom. A shoe box in the master

bedroom closet contained $1,582.00 in U.S. currency. Finally, the agents located $4,800.00 in U.S. currency bound with money bands and wrapped in lingerie in a the master bedroom closet. In addition to the currency, the search also yielded nine firearms, keys to the three vehicles located at 3605 County Road 47, Lot 4, Verbena, Alabama, and a set of keys that opened a shed in the back yard. Garcia indicated that he rented this shed to a couple of Hispanic males, but that he did not know their names. In the shed, agents found approximately a half a kilogram of cocaine HCL, a bottle of GNC Inositol Powder ("Cut"), and a bullet proof vest.

In June of 2009, Solis filed a verified claim in which she indicated that at least $7,000 of the money seized from her home on May 1, 2009 was her money that she had earned from her employment at a grocery store. According to Solis, she was paid $300.00 per week in cash beginning in November of 2005. Along with her verified claim, Solis submitted a form letter signed by her employer confirming her employment at that rate from November 23, 2005 through the date of the search. Garcia filed a verified claim in the Administrative proceeding claiming ownership of approximately $10,500 of the currency seized. Garcia claimed that he earned this currency from his legitimate tree planting business, but the currency was packaged consistently with drug trafficking transactions. Furthermore, Garcia subsequently entered a plea of guilty to charges relating to a narcotics trafficking conspiracy. Garcia has not filed a claim in this action asserting any interest in the U.S. Currency found at 115 Colonial Circle on the date of his arrest.

On June 10, 2010, Solis filed her claim in this action asserting an interest in the U.S. Currency found in the master bedroom closet during the search, but not to any of the other funds. *See* Doc. # 17-2 at n.1. Solis estimated that the currency in the closet was approximately $7,000,[2] but the undisputed evidence before this Court establishes that the currency in the master bedroom closet was $6,382.00. At her depostion, Solis testified that her money in the closet totaled about $4,000. Solis testified that the money found in the master bedroom closet was money she was saving. Some of this money came from her employment at a grocery store.[3] Solis admits, however, that some of the money in the master bedroom closet was money Garcia gave her which is combined with money she earned. Solis denies *knowing*, prior to Garcia's arrest, that the money Garcia gave her came from illegal drug activities, but she conceded that she did not *know* where all of Garcia's money came from, including money he gave her. Solis testified that she did know that Garcia was engaged in agricultural work for various farmers and that he had a business involving trees. When asked directly if she knew of any other ways he was earning money prior to his arrest, Solis invoked her rights under the Fifth Amendment.

---

[2] At her deposition, she admitted this number was a guess.

[3] From the record before this Court, it appears that this employment was under the table, and her employer has no records documenting specific amount she paid Solis. Solis was not living or working in this country legally. She was not paying taxes on the income she earned.

5

## SUMMARY JUDGMENT STANDARD

Under Federal Rule of Civil Procedure 56(c), summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323. The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing the non-moving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-23.

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324. *To avoid summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts."* *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (emphasis added). A plaintiff must present evidence demonstrating that he can establish the

6

basic elements of his claim. *Celotex,* 477 U.S. at 322. A court ruling on a motion for summary judgment must believe the evidence of the non-movant and must draw all justifiable inferences from the evidence in the non-moving party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c).

## DISCUSSION

### *I. Forfeitability*

#### *A.     Civil Asset Forfeiture Reform Act*

The civil forfeiture statute invoked by the United States in this case operates to allow a court to declare any property which is involved in certain types of illegal transactions to be forfeitable to the government. *See United States v. $557,933.89*, 287 F.3d 66, 77 (2nd Cir. 2002). The justification for such a law is that such property is either the proceeds of illegal transactions or somehow being used to facilitate illegal transactions. *Id.* In an action such as this one, the government is the plaintiff and the property is the defendant. *Id.* at 79. It is the government's right to forfeiture that is the sole cause of action adjudicated. *Id.* If the government fails to meet its burden of proof, a person with a proper claim to the defendant property may take the property without presenting any evidence. *Id.*

On April 25, 2000, Congress passed the Civil Asset Forfeiture Reform Act of 2000

(hereinafter "CAFRA"), Pub. L. No. 106-185, 114 Stat. 202, to address concerns associated with federal civil forfeitures. Since the Government commenced this action after August 23, 2000, the date on which the CAFRA became effective, CAFRA applies to this case. CAFRA overhauled the procedures for civil judicial forfeiture proceedings. *See* 18 U.S.C. § 983. Significantly, the Government now has the burden of proving by a preponderance of the evidence that the property is subject to forfeiture. *See* 18 U.S.C. § 983(c)(1); *also United States v. One 1991 Chevrolet Corvette*, 2005 WL 1846996, * 4 (S.D. Ala. 2005) (citing 18 U.S.C. § 983(c)(1)). Once the Government has shown that the property is subject to forfeiture, "the burden of proof shifts to the claimant to show, by a preponderance of the evidence that the property is not subject to forfeiture." *United States v. Cleckler*, 270 F.3d 1331, 1334 (11th Cir. 2001) (citation omitted). "The claimant may meet this burden either by rebutting the government's evidence or by showing that the claimant is an innocent owner." *Id*.

### B.     *Government's Burden of Proof*

At the outset, the Court first must determine whether the Government has met its initial burden of proof to establish that the property is subject to forfeiture. Under the CAFRA,

(1)     the burden of proof is on the Government to establish, *by a preponderance of the evidence*, that the property is subject to forfeiture.
(2)     the Government may use evidence gathered after the filing of a complaint for forfeiture to establish, by a preponderance of the evidence, that property is subject to forfeiture; and
(3)     if the Government's theory of forfeiture is that the property was used

> to commit or facilitate the commission of a criminal offense, or was involved in the commission of a criminal offense, the Government shall establish that there was a substantial connection between the property and the offense.

18 U.S.C. § 983(c) (emphasis added). The Government alleges that the defendant currency is subject to forfeiture pursuant to 21 U.S.C. § 881, which provides for forfeiture of:

> All moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for controlled substance, or listed chemical in violation of this subchapter, all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of this subchapter.

21 U.S.C. § 881(a)(6). "To obtain a civil forfeiture, the government must establish by a preponderance of evidence 'a substantial connection between the property and the offense.'" *U.S. v. 3402 53rd Street W., Bradenton, FL*, 178 Fed. Appx. 946, 947 (11th Cir. 2006) (citing 18 U.S.C. § 983(c)(1) & (3)). The government "may use both circumstantial evidence and hearsay," and the district court should evaluate the evidence presented with "a common sense view to the realities of normal life." *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1440 (11th Cir.1991) (internal citations and quotation marks omitted). Indeed,

> if the Government's theory of forfeiture is that the property was used to commit or facilitate the commission of a criminal offense, or was involved in the commission of a criminal offense, the Government shall establish that there was a substantial connection between the property and the offense.

18 U.S.C. § 983(c)(3). "The government need not connect the defendant currency to any particular drug transaction." *United States v. $121,100.00 in United States Currency*, 999 F.2d 1503, 1508 (11th Cir. 1993).

9

"Whether the government has shown probable cause for forfeiture is a question of law." *United States v. Cleckler*, 270 F.3d 1331, 1334 (11th Cir. 2001). (citation omitted). "Probable cause in this context is a reasonable ground for belief: something more than mere suspicion but less than prima facie proof." *Id.* (citation omitted).

The undisputed facts in this case establish that Garcia was knowingly and willfully involved in an illegal narcotics trafficking conspiracy. Moreover, from the undisputed evidence before it, the Court finds that the United States has shown by a preponderance of the evidence a substantial connection between Garcia's currency and his narcotics trafficking. Thus, the United States has shown probable cause for forfeiture of Garcia's currency.

There is also evidence in this case which when credited establishes that both Garcia and Solis earned money from activities unrelated to Garcia's drug trafficking. There is no evidence that Garcia segregated such money from his drug trafficking money. When legitimate funds are "knowingly commingled" with forfeitable funds, the legitimate funds also become subject to forfeiture. *See, e.g., United States v. One Single Family Residence Located at 15603 85th Ave. N.*, 933 F.2d 976, 982 (11th Cir. 1991); *United States v. Six Thousand Two Hundred Seven Dollars ($6,207) in United States Currency*, No. 2:08cv999-MEF, 2010 WL 3825596, at *4-*5 (M.D. Ala. Sept. 24, 2010); *United States v. $52,000, More or Less, in United States Currency*, 508 F. Supp. 2d 1036, 1044-45 (S.D. Ala. 2007). Thus, Garcia rendered any legitimate earnings forfeitable by commingling them with

forfeitable funds.

With respect to Solis, the question becomes whether she knowingly commingled her earnings with Garcia's forfeitable funds thereby subjecting all of her earnings forfeitable as well. It is undisputed that Solis received cash from Garcia which she commingled with her cash payments for her work. Thus, the central question is did Solis know that some of Garcia's money was subject to forfeiture because it was connected to illegal drug activity. Solis admits that she could not tell how Garcia came to possess the cash he gave her. She was aware that he was engaged in work relating to farms and to trees. When specifically asked if she knew, prior to his arrest, of other ways he was earning money, she invoked he right under the Fifth Amendment in order to avoid answering the question.

While she is free to invoke these rights, it is not without consequence to her claims in this action. In a civil suit such as this one, a court may draw adverse inferences against a party who invokes the Fifth Amendment. *See, e.g., Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, 561 F.3d 1298, 1304 (11th Cir. 2009); *U.S. v. Three Hundred Thirty-Nine Thousand, Eight Hundred Eighty Four Dollars ($339,884) in United States Currency*, No. 99-2238-CIV, 2000 WL 34612065, at *7 (S.D. Fla. Mar. 2, 2000). This is true even in a civil forfeiture action unless the claimant in the civil case is also then a defendant in a criminal case and is forced to choose between waiving the privilege and losing the civil case on summary judgment. *See, e.g., United States v. Two Parcels of Real Property Located in Russell County, Ala.*, 92 F.3d 1123, 1129 (11th Cir. 1996); *United States v. One Hundred*

*Thirty Thousand Fifty-Two Dollars ($130,052.00) in United States Currency*, 909 F. Supp. 1506, (M.D. Ala. 1995).

Thus, the well-settled law allows this Court to infer that Solis' testimony in response to the question regarding her knowledge of Garcia's other ways of earning money would not have been favorable to her position as a claimant to the defendant currency. *United States v. Two Parcels Located at 2730 Highway 31, Jemison, Ala.*, 909 F. Supp. 1450, 1462-63 (M.D. Ala. 1995). Simply put, Solis' invocation of her Fifth Amendment rights gives rise to the inference that she knew that Garcia was involved in earning money through drug trafficking. Thus, when she knowingly commingled her earnings with money from Garcia she rendered her earnings subject to forfeiture. Thus, the United States has established probable cause for the forfeiture of all currency seized from 115 Colonial Circle.

### C.   *Claimant's Burden*

Once the Government establishes probable cause, the burden of proof shifts to the claimants to show by a preponderance of the evidence that the property is not subject to forfeiture. *Id.* The claimant may do so either by rebutting the government's evidence or by showing that she is an "innocent owner" as set forth in 18 U.S.C. § 983(d). *Id.* "A claimant possessing actual knowledge of the commingling of legitimate and drug funds may still claim the innocent owner defense 'if the claimant can prove that everything reasonably possible was done to withdraw the commingled funds.'" *United States v. Six Thousand Two Hundred Seven ($6,207) Dollars in United States Currency*, 2010 WL 3825596 at *5. Simply put, "if

a claimant has actual knowledge of the drug proceeds at the time [s]he takes [her] interest in them, then the innocent owner defense is unavailable and *all* property that the claimant commingles with the drug proceeds is forfeitable." *Id.* Where as here, the only evidence before the Court regarding Solis' knowledge of Garcia's earnings from drug trafficking is the adverse inference created by her refusal to respond to the questions about her knowledge of those activities. This evidence strips her of the innocent owner defense with which to rebut the government's evidence.

## CONCLUSION

It is understood that one who engages in criminal conduct runs the risk of incarceration and the forfeiture of his property; this case, however, provides a crucial warning for those who knowingly associate with criminals. One cannot receive money from drug dealers, with a wink and a nod, and then be immune to the consequences. For the foregoing reasons, it is hereby ORDERED as follows:

1. The Government's Motion for Summary Judgment (Doc. # 21) is GRANTED.

2. Having failed to in any way establish an entitlement to judgment as a matter of law, the Motion for Summary Judgment filed by Sheila Delgado-Solis (Doc. # 17) is DENIED.

3. It is ORDERED that the Government shall file a proposed Decree of Forfeiture **on or before December 19, 2010**.

4. The pretrial conference scheduled for February 25, 2011 and the trial scheduled for March 21, 2011 are CANCELLED.

5.  The Court will enter a separate final judgment consistent with this Memorandum Opinion and Order after entry of the Decree of Forfeiture.

DONE this the 29th day of November, 2010.

                                                    /s/ Mark E. Fuller
                                  CHIEF UNITED STATES DISTRICT JUDGE